El Pueblo de Puerto Rico, demandante y apelado, *v.*
Bautista Maceira, acusado y apelante.

No. 4050.—*Sometido:* Febrero 12, 1930. *Resuelto:* Marzo 11, 1930.

*P. Amadeo,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

La denuncia presentada originalmente en este caso, es como sigue:

"Yo, Ángel Ortiz, Cabo P. I., vecino de Santurce, P. R., calle de Avenida Borinquen, mayor de edad, formulo denuncia contra Bautista Maceira, por un delito de hurto menor (infracción artículo 438 del Código Penal), cometido de la manera siguiente: Que en uno de los días del mes de diciembre de 1928, y en la calle Buenaventura, Sunoco, Santurce, P. R., del Distrito Judicial Municipal de San Juan, P. R., el acusado Bautista Maceira, allí y entonces, ilegal voluntaria y maliciosamente con intención de lucrarse en su propio beneficio e impedir de este modo que su legítimo dueño volviera a poseer la propiedad hurtada, compró a los menores Jesús Facundo, Ángel Vargas, Luis Suárez, José Pizarro, Luis Rivera, Martín Lacosta y Eligio Ortiz, todos menores de 18 años, cuatro cartuchos de hilo, una lata de ciruelas, varios cartones de cigarrillos, dos quesos de bola, varios pares de chancletas, una botella de cerveza Touborg, varias escobas, una botella de anís escarchado y un bloque de papel blanco, a sabiendas de que dichos objetos eran hurtados por los re-

feridos menores en el establecimiento de Juan Pagán, en Sunoco, y los cuales no han sido ocupados por haber dispuesto de ellos el acusado. Hecho contrario a la ley. . ."

En el juicio ante la Corte de Distrito de San Juan, la prueba testifical tendió a establecer el hecho de que el acusado compró a varios niños y a bajo precio, diferentes mercancías y objetos que aquéllos habían robado en diversos establecimientos de comercio. A tal fin declararon los siguientes testigos:

Angel Ortiz, cabo de la Policía Insular, que hizo el arresto de los menores, autores de las raterías, y que arrestó también al acusado Maceira, a quien encontró puesto un pantalón que fué reconocido por uno de los rateros como robado en una tienda por él mismo, e identificado por el dueño como uno de los que le faltaban; y declaró también que no había podido recuperar los cartuchos de hilo, una lata de ciruelas, unos quesos, unos cartones de cigarrillos, y otros objetos, de cuya sustracción tuvo conocimiento por los dueños de los comercios.

Juan Pagán declaró que de su tienda le faltaban varias cosas, hilo, quesos, cartones de cigarrillos, etc., y no las pudo recuperar.

Luis Suárez, de once años de edad, declaró que Jesús, Sopa y unos cuantos más robaban, y al declarante, a Juancho y a Soto se las daban a vender; que le dieron dos docenas de pantalones y dos quesos; que el queso se lo vendió al acusado, porque Jesús Facundo le dijo que se los llevara, y así lo hizo y le dijo al acusado que allí le mandaba Jesús a que le comprara aquellos quesos; que el acusado dijo al declarante que robaran poquito y con cuidado.

Angel Vargas dijo ser de los que cogieron muchas cosas en casa de Juan Pagán, entre ellas, cajas de cigarrillos, escobas, cerveza y ciruelas, y unos cartuchos de hilo que cogió Facundo y que se los llevó a Bautista Maceira, que le pagó por ellos, como le llevaron una lata de ciruelas que habían robado; que Maceira les dijo que robaran con cuidado,

no les fueran a coger; que también robaron unos cartones de cigarrillos, y se los vendieron al mismo Bautista o Don Bausta.

En forma análoga a estos dos testigos declararon Jesús Facundo, de trece años, y Eligio Ortiz; quienes dijeron cómo se robaban aquellos objetos, y que se los vendían a Bautista Maceira.

Bautista Maceira declaró negando lo que afirmaron los muchachos, y sosteniendo que suponía eso era un rancho.

Joaquín Rivera, Juan Ruiz y José Cruz Hernández, declararon conocer por mucho tiempo a Bautista Maceira, y ser éste un hombre de buena reputación como honrado y trabajador, y que había tenido negocios en Santurce, establecimiento de provisiones y teatro.

La corte declaró al acusado culpable de infracción del artículo 438 del Código Penal, y le impuso quince días de cárcel y las costas. Y contra esa sentencia apeló el acusado.

Cinco errores señala el apelante. Son éstos:

"I.—La corte erró en la apreciación de la prueba.

"II.—La corte erró al no sostener la oposición de la defensa a que se eliminara la respuesta dada por el testigo Jesús Facundo, referente a una pistola. (Página 21, línea 9 del récord.)

"III.—La corte erró al declarar culpable al acusado, basándose en prueba consistente en declaraciones de cómplices.

"IV.—La corte erró al declarar culpable al acusado sin que se le ocupara la propiedad hurtada.

"V.—La corte erró al declarar culpable al acusado sin que se identificara la propiedad hurtada."

Sin que justifique el porqué, el apelante argumenta sus señalamientos en conjunto. Quizá esto sería razón bastante para que desestimáramos el caso, por falta de cumplimiento del reglamento de este tribunal. Pero, no obstante, queremos examinar y resolver acerca de ellos.

En la apreciación de la prueba no se señala el manifiesto error que sería justificación para que pudiéramos revocar. En realidad, ni conflicto hay en esa evidencia, ya que el

acusado sólo tendió a probar su buena reputación. Pero, vista la prueba, no imaginamos en qué otra forma pudo ser apreciada más que en la que lo hizo la corte.

A propósito de este señalamiento, suscita el apelante la interesante cuestión de si se ha establecido, o no, el *corpus delicti*.

En un caso como el presente, el hecho de que a unos menores de 18 años, circunstancia que en éste caso se revela por la simple apariencia de los niños de que se trata, se les compraran objetos diversos, quesos, pantalones, cigarrillos, etc., a precios mínimos, aun sin que se investigara por el comprador la procedencia de los mismos, quizá fuera por sí suficiente. Pero, de las declaraciones prestadas resulta aun más; aparece el conocimiento por parte del acusado de la procedencia de los objetos que compraba.

Quizá no tiene una estricta aplicación la decisión en el caso *El Pueblo* v. *Garcés,* 36 D.P.R. 270, porque allí se encontraron los acumuladores robados en poder del acusado; pero de esa decisión aparece algo de suma importancia para este caso. Garcés era traficante en efectos para automóviles, y compró dos acumuladores en cinco dólares; él sabía que el precio corriente de los acumuladores era de diez y ocho a veinte dólares cada uno. Y esto se interpretó contra Garcés. En esa decisión se cita el caso *People* v. *Clausen,* 120 Cal. 382, en donde se dijo que la cuestión de si el acusado conocía que los artículos eran robados es para ser determinada por todos los hechos del caso.

Conviene citar aquí un párrafo de la opinión de este tribunal en el caso *El Pueblo* v. *Moreno,* 28 D.P.R. 104, en que se dice:

"El tercer señalamiento de error se funda en la supuesta omisión de establecer el *corpus delicti.* Aparentemente nadie én la corte inferior dudó que el muchacho fué muerto por el automóvil. El juez ni siquiera mencionó la muerte en el resumen que hace de los hechos y si de dicha exposición de hechos puede inferirse razonablemente la muerte originada por el golpe según las manifestaciones

de los testigos que constan en los autos sin la prueba directa de un médico, dicha inferencia puede hacerse en la apelación. La madre dijo, sin que se le hiciera objeción, que su hijo fué muerto por el automóvil que guiaba el acusado. Muchos de los testigos manifiestan que el automóvil le pasó por encima al niño. Otro testigo dijo que él lo recogió, que se lo quitaron y lo llevaron al hospital donde murió. De estas manifestaciones aunque fueran de referencia, lo que no consta, el jurado a falta de objeción, tenía derecho a inferir que el niño había muerto; que murió casi inmediatamente y que su muerte fué debida a haber sido arrollado por el automóvil. El acusado renuncia a la necesidad de la prueba directa cuando permite que se presente otra prueba en el juicio.''

Se ha dicho por la jurisprudencia que el *corpus delicti* es ''el cuerpo y substancia del crimen,'' que con relación a delitos determinados significa la comisión real por alguno del delito especial de que se acusa. (Véase 16 C. J. 771, párrafo 1578.)

En el caso *Rupord* v. *State*, resuelto por la Corte de Apelaciones de Oklahoma, 122 Pac. 1108, se encuentra en el *syllabus* lo que sigue:

''En juicio en que se imputa al acusado la transportación ilegal de bebidas embriagantes de un sitio dentro del estado a otro, sólo incumbe a El Pueblo establecer por la prueba, más allá de una duda razonable, que el licor que se alega haber sido transportado, o parte de él, lo fué tal como se alega en la acusación.''

Para determinar en cuanto a este extremo precisa estudiar la alegación hecha de que la prueba aquí consistió en el testimonio de cómplices, sin que hubiera corroboración.

En 16 Corpus Juris 700, párrafo 1420, encontramos:

''Prueba del corpus delicti.—Se ha resuelto que el requisito de la corroboración sólo se extiende a la culpabilidad del acusado, y que, así, puede establecer el *corpus delicti* por la declaración no corroborativa de un cómplice; pero también hay autoridades que sostienen el criterio de que un cómplice debe ser corroborado aun con respecto a la comisión de un delito para distinguirla de la conexión del acusado con el mismo.''

En la decisión en el caso *El Pueblo* v. *Alvarez,* 37 D.P.R. 578, se ha dicho:

"Quizá una de las dificultades en este caso es que el acusado y Carbonell no eran culpables de la comisión del mismo delito; cada uno de ellos, de ser culpable, había cometido un acto delictivo independiente. No hay indicio de una intención común, y difícilmente podría pensarse en que ellos eran cómplices."

El artículo 438 de nuestro Código Penal es perfectamente claro. La compra o la recepción de cosas muebles hurtadas, a conciencia de tal condición, constituyen un delito independiente del de hurto. Y en ese sentido los menores que en el juicio declararon no son cómplices.

No concebimos en qué pudieran perjudicarse los derechos esenciales del acusado, porque la corte no ordenara la eliminación de una contestación de Jesús Facundo con respecto a una pistola. Recordemos que el juicio se celebra ante un tribunal de derecho, y no ante un jurado; y no hay temor a que el juez tome en consideración un extremo que es a todas luces recusable. El juez, instintivamente, y en la costumbre de juzgar, aparta la prueba que no debe tener en cuenta por ser incompetente, inconducente e indebida.

▮ No se encontró la propiedad hurtada en manos del acusado. Y tratándose de cosas muebles, enajenables con la simple tradición, y de mercaderías que no se espera que una persona guarde como curiosidad o para su recreo, lo lógico es que esos objetos no se encontraran en su poder. Si esto se exigiera como indispensable, sería muy raro el caso en que pudiera castigarse ese delito.

No existe ninguno de los errores señalados.

*Debe confirmarse la sentencia apelada.*