*1014 TEXTO COMPLETO DE LA SENTENCIA
En el presente recurso se apela de la sentencia dictada el 5 de diciembre de 1996, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Kalil Bacó Viera, J.), mediante la cual se halló culpable al apelante por infracción al Art. 168 del Código Penal, 33 L.P.R.A. see. 4274 (recibo y transportación de bienes apropiados ilegalmente). Por entender que no se cometió el error imputado, procedemos a confirmar la sentencia.
I
En el presente caso se cuestiona la suficiencia de la prueba para sostener una condena por infracción al Art. 168 del Código Penal, más allá de duda razonable. La disposición de este recurso requiere que examinemos la prueba testifical presentada según surge de la Exposición Narrativa de la Prueba (E.N.P.), que certificara como correcta el Tribunal de Primera Instancia.
Durante el juicio testificó el señor Francisco Ríos Oyóla quien declaró que es dueño de la Lechonera Xavi ubicada en el Barrio Quebrada Cruz en Toa Alta; que el día 24 de enero de 1996, notó que le faltaban dos cerdos con un valor de $150.00 cada uno; que el 3 de febrero de 1996, notó que le faltaban dos "trimmers'una máquina de amolar machetes, dos tanques de gas y un reloj para el gas, todo con un valor aproximado de $1,500.00. (E.N.P., pág. 1). Continuó declarando el señor Ríos Oyóla, que fue donde su hermano y le preguntó sobre la propiedad y éste le informó que no la tenía; que siguió investigando por el barrio y así llegó hastá el apelante, y al testigo Angel Guzmán Cintrón (Jerry); que esta investigación la realizó junto con el policía Blas Marrero; que al preguntarle al apelante sobre la propiedad éste le indicó que había sido Jerry; y que Jerry a su vez señaló al apelante como la persona que le robó. (E.N.P., pág.2).
En el contrainterrogatorio Ríos Oyóla declaró que nunca ha vuelto a ver las propiedades mencionadas y que los cerdos pesaban unas ochenta (80) libras cada uno. E.N.P., pág. 2.
El testigo, policía Blas Marrero, indicó que Ríos Oyóla le informó que el apelante le dijo que Jerry se había metido en su establecimiento y cuando encontraron a Jerry, éste les informó que el apelante se metió al negocio junto a otras dos personas. (E.N.P., pág. 3.)
Luego testificó Angel Guzmán Cintrón (Jerry) quien señaló que el 23 de diciembre de 1996, a las 4:00 a.m., el apelante fue a la ventana de su casa y lo despertó diciéndole que tenía unos lechones afuera; que los lechones estaban muertos, pelados y en cajas; que el apelante se fue y supuestamente buscó una guagua y se llevó los lechones; que el 3 de febrero de 1996, vio al apelante y a Edwin Figueroa Figueroa (co-acusado) frente a su casa; que el apelante tenía dos "trimmers"; que subieron los dos a casa de Edwin y luego el apelante bajó sin los "trimmers"; que en otra ocasión vio al apelante con unas botellas de gas de acetileno, unos relojes de echar gas y una piedra de amolar cuchillos; y que en relación con los tanques de gas y los relojes, Edwin le dio $50.00 al apelante por toda la propiedad.
Durante el contrainterrogatorio Guzmán Cintrón dijo que durante las fechas del 24 de enero de 1996 y el 3 de febrero de 1996, nadie le ofreció venderle nada ni le pidió que guardara algo en su casa, ni le pidió transportación para llevar las cosas a otro sitio. (E.N.P., págs. 3-4.)
*1015 Escuchada la prueba y las argumentaciones finales de ambas partes, el Tribunal de Primera Instancia declaró culpable al apelante de los dos cargos de infracción al Art. 168 del Código Penal.
Inconforme con el dictamen del Tribunal de Primera Instancia el acusado presentó el recurso de apelación que nos ocupa.
Le imputó al tribunal a quo como único error el que la prueba contra el apelante fue insuficiente en derecho, no demostrando la culpabilidad del mismo fuera de duda razonable. En apoyo a su planteamiento de error, el apelante alegó que no se probó el valor de los objetos hurtados y que la prueba circunstancial presentada por el Ministerio Público fue insuficiente en derecho para establecer el hecho fuera de duda razonable.
II
La Constitución del Estado Libre Asociado de Puerto Rico, en específico su Carta de Derechos, enumera los derechos y protecciones de las personas frente al Estado; entre éstas se encuentra la presunción de inocencia. Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico. La presunción de inocencia requiere que toda convicción esté sostenida por prueba que establezca fuera de duda razonable todos los elementos del delito y la conexión del acusado con los mismos. La prueba debe ser suficiente en derecho para derrotar la presunción de inocencia del acusado. Pueblo v. Bigio Pastrana, 116 D.P.R. 148 (1985); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981); Pueblo v. Rivera Alicea, 125 D.P.R. 37 (1989). Culpabilidad fuera de duda razonable es aquella convicción que produce seguridad, de que se ha cometido el delito imputado, a una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Carrasquillo, 102 D.P.R. 545 (1974); Pueblo v. Maisonave Rodríguez, 129 D.P.R. _ (1991), 91 J.T.S. 67; Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984).
Esto no quiere decir que toda duda posible tenga que ser destruida y que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia establezca aquella certeza evidenciaría que convence, dirige la inteligencia y satisface la razón. Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. Pueblo v. Gagot Mangual, 96 D.P.R. 625 (1968); Pueblo v. Bigio Pastrana, supra; Pueblo v. Meléndez Rodríguez, 136 D.P.R. _ (1994), 94 J.T.S. 103.
La evidencia circunstancial es esencialmente igual a la directa y ambas se evalúan con el mismo criterio: para producir una condena la prueba debe producir la culpabilidad más allá de duda razonable. Pueblo v. Ortiz Rodríguez, 100 D.P.R. 972 (1972); Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986).
La apreciación del juzgador de los hechos sobre la culpabilidad del acusado es un asunto mixto de hecho y de derecho. Pueblo v. Echevarría Rodríguez, 128 D.P.R. _ (1993), 93 J.T.S. 43; Pueblo v. Carasquillo, supra; Pueblo v. Cabán Torres, 117 D.P.R. 645 (1985). Como tal la determinación del juzgador de los hechos en el tribunal de instancia a los efectos de que la culpabilidad del imputado ha quedado establecida más allá de duda razonable, es revisable en apelación como cuestión de derecho. Pueblo v. Cabán Torres, supra; Pueblo v. Serrano Nieves, 93 D.P.R. 56 (1966).
Es doctrina bien establecida la deferencia y respeto que merecen las determinaciones y apreciaciones de los jueces de instancia ya que son quienes están en mejor posición de aquilatar la prueba. En ausencia de elementos de perjuicio, parcialidad o error manifiesto los tribunales apelativos no intervendrán con la apreciación de la prueba. Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Pagán Ortiz, supra; Pueblo v. Millán Meléndez, 110 D.P.R. 171, (1980); Pueblo v. Meléndez Rodríguez, supra.
*1016 En cuanto a la alegación del apelante sobre que no se probó el valor de los objetos hurtados la doctrina ha establecido que el testimonio del perjudicado es suficiente de por sí para estimar el valor del objeto sin que sea necesaria prueba pericial al efecto. Pueblo v. Gagot Mangual, 96 D.P.R. 625 (1968); Pueblo v. Bonilla Figueroa, 83 D.P.R. 295 (1961).
La norma para determinar lo que vale el objeto es el valor en el mercado, no el costo original, en la época y el lugar en que se cometió el delito. Cuando un testigo declara en términos generales en cuanto el valor de un artículo de uso común, se asumirá que se refiere al valor en el mercado, a menos que de la declaración surja que el valor se basa en alguna otra consideración. Pueblo v. Rivera, 75 D.P.R. 298 (1953).
III
Entendemos que en el presente caso la prueba presentada a través de los diversos testimonios y creída por el tribunal de instancia es suficiente para establecer todos los elementos del delito y la conexión entre el acusado y la conducta delictiva.
El Artículo 168 del Código Penal, 33 L.P.R.A. sec. 4274, tipifica como delito el recibo y transportación de bienes muebles apropiados ilegalmente. Dicho delito puede llevarse a cabo de varias maneras, a saber: comprar, recibir, retener, transportar, cargar o disponer de algún bien mueble a sabiendas de que fue obtenido mediante un delito o de manera ilícita. Se considerará delito menos grave si el valor del bien protegido no excede los doscientos dólares, si es igual o mayor de esta cantidad entonces el delito es grave.
En el presente caso se desprende que el testigo Ríos Oyóla declaró que los dos cerdos tenían un valor de ciento cincuenta dólares cada uno y que las dos podadoras ("trimmers"), una piedra de amolar cuchillos, dos tanques de gas, y un reloj para el gas tenían un valor de mil quinientos (1,500) dólares. La doctrina ha establecido que el testimonio del dueño de un objeto es suficiente para establecer el valor de la propiedad. Pueblo v. Laureano Figueroa, 97 D.P.R. 354 (1969); Pueblo v. Bonilla Figueroa, supra. Tampoco es necesario que se presente el bien mueble en el juicio a los fines de identificación, después que se prueben todos los elementos del delito fuera de duda razonable. Pueblo v. Pérez, 43 D.P.R. 796 (1932); Pueblo v. Vargas Delgado, 105 D.P.R. 335 (1976). El señor Ríos Oyóla como dueño y comerciante dedicado al negocio de lechoneras puede muy bien estimar el costo de su propiedad desaparecida, no necesitándose otro testimonio para establecer el valor de los bienes. Además, su testimonio sobre ese aspecto no fue rebatido en el juicio. En adición se presentó el testimonio de Angel Guzmán Cintrón, quien conecta al apelado con unos bienes que corresponden a la descripción de los que le faltaron a Ríos Oyóla. Específicamente los días 23 de enero de 1996 y el 3 de febrero de 1996, Guzmán Cintrón vio al apelante con una mercancía que correspondía a la descripción de la que fue reportada como desaparecida a Ríos Oyóla. En otro ocasión vio a Edwin Figueroa (el coacusado) dándole al apelante cincuenta (50) dólares por unos tanques de gas y unos relojes. La evidencia presentada por el Ministerio Público en este caso nos parece suficiente en derecho, conectando al apelante con los hechos y con el delito que se le imputa. El Tribunal de Primera Instancia creyó esta prueba y no habiendo en su juicio ningún error manifiesto, prejuicio o parcialidad no intervendremos con su apreciación.
IV
Por los fundamentos antes expresados concluimos que el error imputado no fue cometido. Por lo tanto, se confirma la sentencia.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General